HEARD NOVEMBER TERM, 1878.

CASE No. 705.

IDA WEBB, BURWELL McBRIDE, SARAH McBRIDE AND WILLIAM McBRIDE v. THE GRANITEVILLE MANUFACTURING COMPANY AND CHARLES L. PAUL.

Certain stock stood upon the books of a corporation in the name of two persons " executors of M." It was then transferred to " P., guardian," and a certificate issued in the same name. P. was in fact guardian of minor children of M. P. endorsed the certificate and put it in hands of D., an attorney-at-law, for safe keeping. Under a petition in P.'s name, setting forth that this stock was the property of P.'s wards under the will of M., D. procured an order from the Circuit judge permitting a sale and re-investment. D. then assigned the certificate to a bank as collateral security for the repayment of money borrowed for his own purposes. Failing to repay, stock was sold, and purchased by the bank by whom it was afterwards transferred to H., president of the bank, who was also president of the corporation, and to G.; transfers being made on the corporation books from " P., guardian," to the bank, and from the bank to H. and G. *Held*, that P. held as trustee, and that the books of the corporation, the certificate of stock and the order of the judge (which alone could give authority to the guardian to sell, and a knowledge of which, therefore, must have been had by the purchaser,) were sufficient to put H. upon inquiry, and so charge him with a knowledge of the trust and conversion ; and that his knowledge in this matter was the knowledge of the corporation of which he was the president.

Before REED, J., at Beaufort, November Term, 1877.

The facts are fully stated in the opinion of the court. The order for the sale of the stock, referred to in the opinion, together with the petition therefor, is as follows:

State of South Carolina, Beaufort county.    In the Circuit Court.

*To the Honorable Judges of the said Court :*

The humble petition of Charles L. Paul showeth, that under .the appointment of the Court of Probate, he is the guardian of the persons and estates of four infants, children of William Mc-Bride, deceased ; that under the last will and testament of Burwell McBride, the grandfather of the said infants, (and of your petitioner,) he has in trust for the said infants, besides other property, —————— shares of the capital stock of the Graniteville Manufacturing Company ; that he is fully persuaded a change of the investment will materially promote the interests of his wards ; that in due course of proceeding, he filed approved bonds with the judge of probate for the said county. Wherefore your petitioner, with full appreciation of his responsibility in the premises, prays your Honors' assent that he may, at his own discretion, so re-invest the said stock for the benefit of his said wards. And your petitioner, as in duty bound, will ever pray, etc.

DAVANT, *Solicitors pro pet.*

ORDER.

On hearing the petition of Charles L. Paul, guardian, and on motion of Messrs. Davant—

It is ordered that the said guardian have leave to sell, transfer and re-invest the said stock in his said petition mentioned, whenever and in such manner as, in the exercise of sound judgment and discretion, it shall appear to him advisable for the best interests of his said wards ; provided, his guardianship bonds continue to be satisfactory to the judge of probate for the said county, and he, the said guardian, make regular and proper accounting, as by law is required.

December 9th, 1870.

At Chambers.            (Signed)        Z. PLATT,
                                            *Circuit Judge.*

The Circuit decree is as follows :

The material facts in this case, as gathered from the pleadings and evidence, appears to be as follows : That the defendant,

Charles L. Paul, was appointed guardian of the plaintiffs by the Probate Court of Beaufort county, on or about the 9th day of June, 1870; that at that time there was standing on the books of the defendant corporation, the Graniteville Manufacturing Company, certain stock in the names of F. W. Fickling and John M. Hill, executors, without naming the person of whom they were executors. But it was proven by the defendant, Paul, that the testator was one Burwell McBride, who was the grandfather of plaintiffs, and who had been long deceased, and that plaintiffs, through another, had an interest in the said stock; that on the 19th day of July, 1870, forty-nine shares of the stock of the defendant company were transferred by F. W. Fickling and John M. Hill, executors, to Charles L. Paul, guardian, to whom the usual certificate was issued, and the number of shares therein named afterwards stood in the stock-ledger of the said company in the name of Charles L. Paul, guardian, as he was described in the certificate.

The names of his wards were not disclosed in the transaction, nor does it appear that plaintiffs are the persons, and that the forty-nine shares of stock were of their estate, otherwise than by the testimony of Paul himself. The fact, however, has not been questioned that on or about the 12th day of December, 1870, the said Charles L. Paul, guardian, transferred and delivered the said certificate of stock to J. C. Davant, by his endorsement on the back of the same, in the presence of two witnesses, and on the 26th day of December, of the same year, the said John C. Davant, claiming to be the absolute owner thereof, transferred the said certificate of stock, in due form, to the "Savings Bank of Augusta, Georgia." That afterwards, upon the surrender of the said certificate to the defendant company, thus endorsed and assigned, a new one for forty-nine shares of its capital stock was issued to the said "Savings Bank of Augusta, Georgia," and subsequently thereto the bank sold and transferred the said stock, for its full value, to H. H. Hickman and Samuel Giles, to whom, upon the surrender of the scrip held by the bank, a new certificate for forty-nine shares of their capital stock was issued, and they are now, so far as appears, the holders and owners of the same. It is claimed that the defendant company were trustees

of plaintiffs, who were the legal owners of the forty-nine shares of stock in question, and sought to make them liable for a breach of trust in permitting the transfer from Paul, guardian, to his assignee, without their knowledge or consent.   As a basis to rest this claim upon, it charged that the defendant company had notice that the forty-nine shares of stock standing in the name of Charles L. Paul, guardian, was in fact their estate.   The testimony in the case, which was all derived from plaintiffs' witnesses, fails to sustain the charge, and is direct to the point that the defendant company had no knowledge whatever as to the ownership of the stock, other than that it stood on their books in the name of Charles L. Paul, guardian.   It appears, from certain informal papers exhibited with the complaint, that a proceeding was instituted in the Common Pleas for Beaufort county, in December, 1870, by John C. Davant, claiming to be attorney for Paul, guardian, to obtain authority for the sale of the forty-nine shares of stock standing in his name.   That proceeding even did not disclose the names of his *cestui que trust,* but an order was nevertheless obtained from a judge, at chambers, authorizing a sale and re-investment.   The order was assumed by plaintiffs' counsel as having been made without warrant of law, and as void on several accounts, but was not alluded to in the argument for the defendant company.   I do not perceive what value could be attached to it in the cause, unless, through it, notice could have been brought home to the defendant company.   That was not done, and, according to the view I take of the case, it is not necessary to pass upon the question raised by that proceeding. The defendant, Charles L. Paul, answering the complaint through plaintiffs' counsel, admits his liability to account, and the single question remaining in the case, therefore, as I understand it, is, did the "Graniteville Manufacturing Company," by permitting the transfer of the forty-nine shares of stock, standing on its books in the name of Charles L. Paul, guardian, to his assignee, make themselves liable under the circumstances as for a breach of trust, for which they should be held to account to plaintiffs?

The case of *Bayard* v. *Farmers' and Mechanics' Bank, of Philadelphia,* 52 *Penna. St.* 232, and of *Magwood* v. *Rail-*

*road,* 5 *S. C.* 379, was chiefly relied upon to fix their liability, whilst the same cases were quoted as authority for the defendant's company. In the first of these cases, the plaintiff held certain certificates of stock, issued to him in the name of Thomas F. Bayard, trustee of Mary Gilpin, and the stock so stood on the books of the banks. By power of attorney duly executed, he authorized his vendee of one of the certificates to transfer the shares named to himself. This the bank refused to permit until it had been referred to their solicitor to ascertain and report the nature of the trust. Whereupon, a friendly action upon a case stated was instituted to determine whether the bank was liable for damages on account of its refusal to allow the transfer. The court held that inasmuch as the name of the *cestui que trust,* Mary Gilpin, was disclosed in the certificate, and upon their books, the bank was justified in refusing to permit the transfer without the production of some authority from her besides the certificate. In the opinion delivered the court says : " That although the legal right was in the plaintiff, he was not the owner. The person to be affected by the transaction was not himself, but Mary Gilpin, and hence the bank was justified in refusing to permit the transfer until some authority beyond the certificate was produced." In the course of the opinion, the case of *Albert and wife* v. *City of Baltimore,* 2 *Md.* 159, is cited, in which it was held that " the mere designation of the holder of the stock as trustee, without a specification of the trust, or naming the *cestui que trust,* is not such notice to the transfer agents as to make it their duty to look beyond the legal title, for it did not point to any source of information. The fiduciary character of the person in whose name the stock stood did not appear ; " and in *Stockdale* v. *South Sea Co., Barn.* 363, the Lord Chancellor says : " It is certain that these great companies are only to consider the person in whose name the stock stands, unless the trust of the stock is disclosed on their books." After referring to other English and American authorities that have held the same doctrine, the statement of Chancellor Johnson, in delivering the opinion in *Albert* v. *Savings Bank,* 1 *Md. Ch. Dec.* 407, is quoted as follows : " These authorities must be understood as applying to cases where the fiduciary character appears,

but there is nothing to indicate the nature of the trust or the beneficiaries," and the court adds, " there is no case in which it has been ruled that a trustee of stock, whose certificate shows a ·declared trust for another *named*, has a right to transfer it without showing a power beyond his certificate." The case of *Bayard* v. *Bank* is, therefore, rather an authority as to how far the transfer agent will be justified in refusing to permit a transfer, than as to how far he may proceed in allowing it, without incurring responsibility. It decides that where the *cestui que trust* is known, the transfer should not be made without his consent; but when unknown, and no clue is given to his identification, as in this case, the transfer may be lawfully made. In *Magwood* v. *Railroad Bank*, H. M. Magwood was trustee of the plaintiff, Elizabeth C. Magwood, and held certain certificates of stock for her, which stood on the books of the bank in his name, as trustee of *Elizabeth C. Magwood.* Without her knowledge or consent, he sold certain of said certificates, and his vendee, under the power given him, was permitted to transfer the stock without question.

The proceeds of the sale were lost to the trust estate, and the action was brought against the bank to recover the value of the stock as improperly transferred. It was held that the bank was liable, " it appearing that the transfer occasioned the loss of the stock." In delivering the opinion the court says: " Inasmuch as the trust, in the present case, was declared on the books and face of the scrip to the extent of naming the *cestui que trust*, it follows that if the action of the trustee in disposing of the stock was without authority, and tended to defeat the object of the trust, the corporation is liable in equity to the extent of any damage sustained by reason of its co-operation with the trustee to that end." The bank having been held liable because the *cestui que trust* was known, and the transfer permitted without her authority, it follows that, as in the case of *Bayard* v. *Bank*, if the trust had not been declared, and the name of the *cestui que trust* disclosed, the transfer would have been justified. The case of *Simons* v. *Railroad Bank*, 5 *Rich. Eq.* 270, is to the same effect. In that case, the bank was held to account for stock improperly transferred, but the decree was predicated on the fact

2 c

that the nature of the trust and the names of the beneficiaries were set out in the certificates and stood upon the books of the bank, what was held to be distinct notice, and as furnishing such indications as, if followed up, must have led to the most complete information on the subject. The inference is, that if these disclosures had not been made, the bank would have been justified in making the transfer. The rule in *Morse on Banks and Banking, p.* 166, is stated thus: "Any person showing a *prima facie* right may demand a transfer to himself, and any officer who can properly make the transfer at all, will be protected in making it, without going behind the apparent legality and propriety of the demandant's rights in order to determine whether there is any hidden cause for objecting to it." And in *Mount Holly Turnpike Co.* v. *Ferrer,* 11 *N. Y. Eq.* 117, it is said that "a certificate of stock in a company, accompanied by a power of attorney authorizing the transfer of the stock to any person, is *prima facie* evidence of equitable ownership in the holder, and renders the stock transferable by the delivery of the certificate." Indeed, the rule as to the transfer of the stocks of incorporated companies by ordinary trustees seems to be settled, that if the name of the *cestui que trust* and real owner is disclosed, the transfer officer should require the production of some other authority besides the certificate before permitting the transfer; but if the names of the beneficial owners are not known, and there be no indication on the face of the scrip, or the books of the company, to put them on inquiry, they are not only justified, but may be compelled to permit the transfer by the *prima facie* owner, as evidenced by the production of the usual power. But it was suggested by the plaintiffs' counsel that there is a distinction between the authority of an ordinary trustee and a guardian in making a transfer of stock, and that the rule was more stringent as to guardians. Without stopping to inquire into the difference in their powers, if there be any, I refer to the case of *Bank of Virginia* v. *Craig, Guardian,* 6 *Leigh* 339, which seems to have been well considered, and from which it appears that a guardian may transfer with more facility than an ordinary trustee.

In that case it was held that "bank stock standing in the name of F., guardian of C., may be sold and transferred by the

guardian, and the officers of the bank had no right to control or prevent him from transferring it on their transfer books." In delivering the opinion of the court, Tucker, J., says: " To concede to the bank the power of permitting or refusing the exercise of his legal power by a guardian, would indeed be of serious consequences. It would annihilate the admitted powers of the guardian over his ward's estate, it would arrest the discharge of his duties, and vest the inquiry into his conduct in the officers of the corporation instead of the courts of justice, or drive him to his *mandamus* or other processes against the bank, to compel its assent to a transfer. The bank has nothing to do with these official trusts. If the guardian defrauds his ward, his sureties are responsible; if the purchaser combines in the fraud, he, too, is chargeable, but the bank cannot interfere and arrest the transfer of its stock by the legal holder of the scrip upon such pretences. It would trammel and embarrass such transactions so as to impede materially that transferable character, which is one of the most valuable attributes of stock." In the case under consideration, the stock which it is sought to make the defendant company responsible for, on account of having unlawfully, as it is said, permitted its transfer from the real owners, was set out in the certificate and stood on their books in the name of Charles L. Paul, guardian ; the nature of the trust was not indicated, nor the name of the beneficiaries given. Suppose they had been given, would that have estopped the company from permitting the transfer on presentation of the certificate ? It was held otherwise in the Virginia case just referred to. Is the rule different in South Carolina ? Has it been so adjudicated as to the office of guardian ? If so, I have not been so fortunate as to find the case. The law in this state is so well settled that it is the first duty of a guardian to collect the personal funds and choses in action belonging to his ward, and invest the proceeds in bonds, secured by mortgages of real estate or government securities ; that it would be a work of supererogation to cite authorities. Is the stock in a manufacturing company anything more than a chose in action, and if a guardian holding such stock permit it to stand and it is lost by the failure of the company, is there any doubt but he would be held liable for it on account of his neg-

lecting a plain legal duty?    I think not.    It being his duty to collect and re-invest, which, in the case of stock, can only be done by a sale and transfer, shall the company that enabled him to do so, by permitting the transfer to his vendee upon the production of his warrant of attorney, be held guilty of a breach of trust?    Or, to save themselves, must they require from the *cestui que trust* some other authority than the certificate and their own records?    What authority?    Infants cannot execute a power; would the letters of guardianship answer, or must he resort to a suit in equity, with its attendant delays, trouble and expenses?

If he do this, it may happen that before he gets the order the corporation may fail, and both guardian and ward, if his sureties be insufficient, be involved in the same ruin.    It is bad policy to encumber these important fiduciary relations with restrictions not clearly deducible from the law, as it is extremely difficult now to get responsible persons to fill them.    And it will be found at last that the interests of infants under guardianship will be best protected, and it is their only protection, by the integrity of their guardians, and the strength of their official bonds.    I am of opinion, therefore, that upon general principles applicable to the office of guardian, the defendant company, in this case, would not have been guilty of breach of trust, even if the wards had been named and the transfer permitted upon the certificate alone, without it had been shown that they were guilty of some *mala fides* in connection therewith.

But, however that may be, as the case stands the stock appeared, *prima facie* at least, to belong to Charles L. Paul, guardian, and was transferred upon his warrant of attorney thus endorsed.    It may have as well been Paul, trustee, or receiver, or agent, or *prochein ami*.    Neither of these descriptions would have proved that there was any one behind to whom it applied as they are doubtless often used for a purpose without indicating an office.    Nor did the addition of the word " guardian " at the end of his name furnish any sufficient indication to put transfer agent upon inquiry even, and therefore the defendant company committed no legal wrong by their agency in the transaction under consideration.    To hold otherwise would, in my judgment, be to

rivet fetters upon the commercial and business transactions of the country, that would be highly prejudicial to the public interest.

*It is therefore adjudged and decreed* that the complaint, as to the Graniteville Manufacturing Company, be dismissed.

J. P. REED.

January 15th, 1878.

From this decree the plaintiffs appealed to this court. .

*Messrs. Tracy & Tracy,* for appellants.

A certificate of stock is a mere *chose in action.* 1 *Saund.* 210, *note a ; Bail. Eq.* 147.

It was not a security of the guardian, but an equitable agreement by the company that in those shares some beneficiaries, not *sui juris,* had the exclusive usufruct, held in trust for them by a guardian.

The guardian had neither the legal nor equitable interest in the stock, and his endorsement transferred no interest. The legal interest is in the corporation.

In South Carolina the guardian is not possessed of any legal estate in his ward's chattels or *choses.* 4 *Rich. Eq.* 70; 9 *Rich. Eq.* 325; 3 *Rich. Eq.* 156; 3 *S. C.* 384; 7 *Mass.* 5.

Whence has a guardian his authority? By appointment of judge of probate. *Gen. Stat.* 573; 2 *Kent* 226. His authority does not extend to power of transferring stock. 2 *Kent* 228. Statute does not define powers of guardians appointed by the court. Such powers over personal estate can extend only to its custody, direction and management. If he could sell forty shares of stock in 1870, he could have sold sixty shares in 1860. See 2 *Smith (Penna.)* 232; 5 *S. C.* 379.

The word "guardian" showed that infants were the real owners of this stock. The corporation alone can make a transfer; it is its duty to see that the person applying has in himself all the interest of the preceding owner. 2 *Smith (Penna.)* 232; 3 *Am. Law Jour.* 111; 14 *Md.* 299; 1 *Md. Ch. Dec.* 407; 8 *Am. Law Reg.* 219; 14 *Allen* 523.

The names of wards not being disclosed may put corporation

to somewhat more trouble, but cannot affect the principle.    Besides, they had knowledge how it was derived.

The order for leave to sell was of no efficacy ; the petition was not signed by general guardian, no guardian *ad litem* appointed, infants. were not parties, and the order was signed by a judge at chambers.    1 *Abb. Forms* 51 ; *Code*, §§ 138, 139, *subd.* 1, 2 ; 1 *Hill Ch.* 27 ; 4 *Rich. Eq.* 62 ; 9 *Rich. Eq.* 325 ; 7 *Rich. Eq.* 43 ; 3 *S. C.* 394 ; 14 *Stat.* 77, § 8.

The stocks were the specific chattels of the wards, and the guardian could not authorize the corporation to transfer.    1 *Rich.* 359 ; 2 *Rich.* 3 ; 12 *Rich.* 333 ; 9 *Rich. Eq.* 325 ; *West. U. Tel. Co.* v. *Davenport*, (Sup. Ct. U. S., Oct., 1878.)

See following as to defendant's liability for an illegal transfer : 2 *Bright.* 293 ; 2 *P. Wms.* 76 ; 14 *Sim.* 475 ; 28 *Beav.* 287 ; 2 *Eden* 299 ; *Tan. C. C. Dec.* 310 ; 4 *Allen* 277 ; 123 *Mass.* 110 ; 14 *Md.* 299 ; 7 *N. Y.* 274 ; 49 *N. Y.* 286 ; 4 *Md. Ch. Dec.* 357 ; 22 *Eng. L. & Eq.* 452 ; 7 *Hurl. & Nor.* 603 ; 58 *N. Y.* 322.

*Messrs. Buist & Buist*, for respondents.

Liability for illegal transfer is admitted, but here there is no knowledge of a trust.    In 5 *S. C.* 379, and in 52 *Penna.* 223, there was such knowledge.    But see 2 *Md.* 159, 168 ; 1 *Md. Ch. Dec.* 407 ; *Perry on Tr.*, § 242 ; 6 *Leigh* 339 ; 37 *Geo.* 515 ; *Tan. C. C. Dec.* 324 ; 7 *Johns. Ch.* 150 ; *Barrett* v. *Cochran*, 11 *S. C.** 

These certificates of stock are negotiable instruments, and the company had no alternative but to make the transfer when demanded by a *bona fide* holder.    48 *How. Pr.* 427 ; 11 *Rich. Eq.* 344 ; 11 *Wall.* 369.    The corporation does not make the transfer ; it only records the transfer, and gives certificates of the fact. The title becomes perfect in the vendee upon assignment of certificate.    *Field on Corp.*, § 110 ; 46 *N. Y.* 325.

The crucial question is, did the mere word *guardian*, added to Paul's name, give the defendants notice of the trust?    Such position of the appellants finds no support in the case relied on (*Bail. Eq.* 147) by them.    In 3 *Rich. Eq.* 157, and 9 *Rich. Eq.*

---

* *Ante* page 29.

311, relied upon by appellants to sustain position that guardian has no authority over ward's property, the property stood in the name of the wards, not in name of the guardian.    In *West. U. Tel. Co.* v. *Davenport* the transfer was a forgery, and illegal under statute of Ohio unless by order of the Probate Court.

April 14th, 1879.    The opinion of the court was delivered by

WILLARD, C. J.    Paul, the guardian of the infant plaintiffs, took from the defendant corporation a certificate of shares of the capital stock of that corporation belonging to his wards in his own name as guardian.    He placed it with a blank endorsement in the hands of Davant, his counsel, for purposes connected with his administration as guardian.    Davant hypothecated the certificate to the Savings Bank of Augusta for money loaned for his personal use.    Hickman, who was president of the bank, and also president of the Graniteville Manufacturing Company, purchased, with Giles, the stock from the bank, and had the stock transferred by the defendant corporation to such purchasers.    To show authority on the part of Paul as guardian to sell the stock, an order of the Circuit judge of the second circuit was produced, claimed as authorizing the guardian to sell the stock for the purpose of changing the form of instrument.    Objections were made to this order that need not be considered, for no sale of the nature authorized was made under it.    As the title of the stock stood in the name of Paul and the beneficial interest in the plaintiffs, his wards, Paul was a trustee for plaintiffs' use.    These relations were sufficiently declared by facts appearing on the face of the certificate and the books of the corporation.    The stock previous to the transfer to Paul as guardian stood in the name of Fickling and Hill, as executors of Burwell McBride.    The plaintiffs are the children of Burwell McBride.    The transfer to Paul as guardian was made with full knowledge on the part of the corporation of the source from which information might have been derived as to the persons represented by Paul, and it must be assumed that the defendant corporation either had full knowledge of the persons entitled as beneficiaries under the trust, or improperly neglected to inform themselves on such subject.    The company were, therefore, apprised of the rights of the parties and

occupy the same position as that of the defendants in *Magwood* v. *Bank*, 5 S. C. 379. Hickman could only derive title through the order of the Circuit judge, as he was chargeable with notice of the guardianship from the certificate itself, and, as we have just held, the guardian had no authority to sell the plaintiffs' beneficial interest in stock constituting an investment, independently of an order of the court for that purpose. *McDuffie* v. *McIntyre.** The order discloses all that was essential to charge Hickman .with full notice of the rights of the plaintiffs, both as wards of Paul and under the trusts with which he was charged. As Hickman's alleged title flows through that order, he is chargeable with notice of its contents. The order did not authorize the guardian to hypothecate the stock for the purpose of borrowing money. Such a transaction is neither within the terms or intention of the order, and cannot be justified under it. It must be assumed that Hickman saw the order and the proceedings upon which it was made, and from that he would be informed that Davant was the solicitor of Paul. In the absence of evidence showing that Hickman had reason to believe and did believe that Davant was a purchaser from Paul of the stock for a fair consideration, it must be assumed that Hickman dealt with Davant as the solicitor or agent of Paul. To hypothecate the stock was a breach of trust. If Hickman supposed that Davant had authority from Paul to hypothecate the stock, which is the assumption most favorable to Hickman, then his action must be regarded as assisting Paul to commit a breach of trust. As Hickman was president of the defendant corporation, that defendant is chargeable with notice of such breach of trust. It is in that case an instance of knowledge brought home to the agent of a corporation possessing full authority to act and actually acting as such in the matter to which the notice relates—the strongest case for charging a corporation with notice of matter known to its agent. It is unnecessary to consider the questions discussed by the Circuit judge, as they have no real application to the facts of the present case. The plaintiffs have lost their estate through a series of wrongful acts that would have been ineffectual for

---

* *Post* Case No. 720.

that purpose but for the transfer of the stock on the books of the defendant corporation, and by the exercise of reasonable prudence and care on their part the loss might have been prevented.

The judgment dismissing the complaint as to the Graniteville Manufacturing Company must be reversed and the cause remanded to the Circuit Court for judgment for the plaintiffs against both defendants.

Decree reversed.

McIVER and HASKELL, A. J.'s, concurred.