## CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF SOUTH CAROLINA.

Justices of the Supreme Court during the Period comprised in this
Volume.

Hon. WILLIAM D. SIMPSON, Chief Justice.
Hon. HENRY McIVER, Associate Justice.
Hon. SAMUEL McGOWAN, "      "

REEVES v. TAPPAN.

1. Until the act of 1880, the executor of an executor in this State repre-
sented the first testator, and was invested with all the powers con-
ferred by the will upon the first executor as executor.
2. A mere naked power conferred upon the executor as an individual
cannot be exercised by his executor, but where the power is conferred
upon the executor in trust and *virtute officii*, it survives and passes
to his executor. Powers considered and classified.
3. Testator by his will directed his executor to pay his debts and a spe-
cific legacy in money, and then devised and bequeathed all the resi-
due of his estate to his brother L. in trust for the use of L.'s children,
to be divided among them share and share alike. L. was appointed
executor of the will with full power to execute the same and to sell
any of the real or personal estate and to invest proceeds as trustee
for his children. L. qualified and afterwards died, leaving S. his
sole executrix. *Held*, that the powers conferred upon L. passed at

his death to his executrix, and that a sale and conveyance by S. of a lot of land of the first testator was a valid sale.

4. L., by his will, authorized his executrix to sell for certain purposes any of the lands of the first testator outside of the city of C. *Held*, that this did not prevent S. from selling lands of the first testator in C., under the power conferred in the first will.

Before HUDSON, J., Richland, April, 1883.

This was an action commenced in August, 1881, by Sarah N. Reeves, Eliza A. Lewis, substituted trustee under the will of Robert N. Lewis, and others, against Henry L. Tappan, Edwin F. Gary, and Geo. L. Dial, administrator, for the recovery of a lot of land in the city of Columbia. The plaintiffs are the children of D. B. Lewis, and claimed the land under the will of their uncle, Robert N. Lewis. The defendants claimed under deed from Sarah B. Lewis, sole executrix of D. B. Lewis, who was sole executor of R. N. Lewis. This deed conveyed the land in question to Tappan and Gary in 1872, for the alleged consideration of $10,000. The whole case turns upon the legal construction of so much of the wills as is stated in the opinion.

The presiding judge charged the jury as follows:

The plaintiffs sue, as devisees under the will of R. N. Lewis, to recover the land devised to them; they have joined a trustee. The land is in the possession of Tappan and Gary. The plaintiffs must recover on the strength of their title. It is a pure question of title, and has nothing to do with feelings or mercy.

The question here is a nice one. The parties must prove a right to the immediate possession. Ordinarily a grant is shown; if not, then to a point where title is presumed, or, then, to a common source. These children have a conveyance from their uncle. Tappan and Gary have a deed from the executrix of the executor of R. N. Lewis. Both claim to hold from R. N. Lewis. When this state of things exists we need not travel in the past. Can the deed of the executrix prevail against the children? If the deed prevails, then Gary and Tappan take the property. If that deed fails, then the children take.

The will of R. N. Lewis makes D. B. Lewis a trustee in trust for the children, and then appoints Daniel B. Lewis executor,

with power to sell and reinvest, &c. It has been asserted here, by one of the counsel for the defence, that some of the best lawyers in the State have given the opinion that the title of Mrs. Lewis was good. It may be so, but it seems to me that a prudent man would hesitate before he would take the title of an executor of an executor under circumstances similar to those in this case, and I ask you, as men of common sense, if you saw that the trustee was dead, would you not hesitate to take the deed of the representative of the trustee?

The executor is empowered to sell and to reinvest. The idea of the testator was that he might want to sell to pay debts "and change investments, or to invest and reinvest for the benefit of the devisees, at his discretion." That was a special trust and confidence in his brother "which he could not devolve on another." When he died that trust ended. I charge you that, under the wills, Mrs. Lewis, the executrix, whilst she could discharge ordinary duties, yet had no power by the will or by law to give a title.

Another title is introduced here—a tax title. Before it could avail the defendants, it became necessary for them to show that all the steps had been taken to make it a good title. Nothing of this kind has been attempted. Without this, this title avails nothing. As far as I know, this is the law of the case.

I am requested to charge you, "That the defendants, Gary and Tappan, having purchased the premises set forth in the complaint from Sarah B. Lewis, mother of plaintiffs, as executrix of D. B. Lewis, executor of R. N. Lewis, from whom the plaintiffs derive title, and the plaintiffs having acknowledged the receipt of the purchase money by the executrix by incorporating the deed of Gary and Tappan in their complaint; such an equitable defence is made as precludes these plaintiffs from recovering these premises in this action."

This proposition is erroneous, and hence refused. By incorporating the said deed in their complaint, the plaintiffs do no more than allege that the defendants, Gary and Tappan, purchased said land of Sarah B. Lewis, as executrix, at and for the sum of ten thousand dollars; but this is not an acknowledgment that the plaintiffs received the money or any part thereof, but is

a declaration that the land was sold and the money received by one who had no authority so to do.

As matter of law, I instruct you that Mrs. Lewis had no power to execute a title to defendants.

As to the question of damages, the counsel for Gary and Tappan having agreed that $200 would be a reasonable sum, that should be the amount, if you conclude that the plaintiffs are entitled to any.

The verdict was for plaintiffs without damages.

The defendants appealed upon several grounds, variously stated in twenty-three exceptions, to the judge's charge and his refusals to charge.

*Messrs. R. A. Lynch* and *L. F. Youmans,* for appellant.

*Messrs. F. W. McMaster* and *James M. McMaster,* contra.

The statute of uses executed the use in the children of D. B. Lewis, and the executor had only a naked power or common law authority to limit new uses at his discretion. 1 *Spears,* 356; 2 *McCord,* 252; 17 *S. C.,* 545. This power is discretionary, and necessarily confined to the individual to whom it is given. *Lewin Trusts,* 538; *Perry Trusts,* §§ 248, 308, 473; 1 *Sug. Pow.,* 126; 7 *Cow.,* 187; 2 *Wend.,* 1; 3 *Brev.,* 242; 4 *Bibb,* 307; 5 *Met.,* 462. The discretionary power given to D. B. Lewis is not coupled with a trust. There is no trust until after the trustee has exercised his discretion, which he never did. And the power of sale here can be executed without the legal estate being in the trustee. 4 *Strob. Eq.,* 74. The fee is in the *cestuis que use,* subject to be divested by the exercise of the power. The language of the will shows that the trustee was not to take the fee. Otherwise, why give the executor power to sell the "real or personal estate." 5 *East.,* 162. But if not executed while D. B. Lewis lived, it certainly was at his death. For the discretion was purely personal, and was therefore extinguished at his death and was incapable of delegation or transmission. The power was given to D. B. Lewis and to him alone. The statute makes transmissible only the ordinary duties of an executor. At Lewis' death

the trust became passive and was therefore executed. *Co. Lit.*, 112*b; 1 Sug. Pow.*, 214, 319; 2 *Wms. Ex'rs*, 810*n; 16 Ves.*, 27; 5 *Paige*, 387; 10 *Cush.*, 571; 2 *Atk.*, 88; 4 *Kent*, 330; 6 *Rich. Eq.*, 23; *Perry Trusts*, 292, 294, 320; *Lewin Trusts*, 253-4; 17 *S. C.*, 550; 11 *Id.*, 71; 11 *East.*, 377; 2 *Salk.*, 679; 2 *McCord*, 252.

March 18th, 1884. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. This case involves the title to valuable real estate in the city of Columbia, now in the possession of the defendants, Tappan and Gary, and the main question before the court is as to the power of an executor of an executor to sell under the will of the first testator. It is admitted that had the executor of the first testator sold and conveyed the property in dispute in his life-time, as did his executrix after his death, that the title of defendants, as purchasers, would have been perfect and complete, at least so far as the plaintiffs are concerned. But it is denied that his executrix could sell; and inasmuch as the defendants, in one of their defences, claim through the sale made by the executrix, the main question, as we have said, when the case is stript of all of its unnecessary surroundings, is as to the power of the executrix of the executor under the will of the first testator.

To determine this question, the two wills must be examined, to wit, the will of Robert N. Lewis, in which his brother, D. B. Lewis, was the appointed and qualified executor, and the will of the said D. B. Lewis, in which his wife, Sarah B. Lewis, was the appointed and qualified executrix. The portions of these two wills necessary to be examined and considered are as follows: In the fourth clause of the will of Robert N. he devised and bequeathed "All the rest, remainder, and residue of my estate, both real and personal, to my dear brother, Daniel B. Lewis, of the State of Texas, in trust, nevertheless, upon the following uses and trusts, that is to say, for the use, benefit, and behoof of the children of my said brother, to be divided amongst them share and share alike, and not to be subject or liable to any of the individual debts, liabilities, or contracts of my said brother." He then nominated and appointed his "said brother, Daniel B. Lewis," his ex-

ecutor, "with full power to execute the will," and "with full power to sell any of my real or personal estate," except the lot specially devised to Emily Bateman and Nicholas Eugene Lewis, and also with full power to compound debts due him without application to any courts of law or equity, and also to invest or reinvest the proceeds and residue as *trustee* for his children, at his discretion.

Daniel B. Lewis, after qualifying and partially administering the estate, died testate, appointing his wife Sarah his executrix. In the second clause of his will he said: "I desire that the will of my deceased brother be carried out as he has directed; that is, after all outstanding debts have been paid, the residue, both personal and real, to be equally divided among my legitimate children, that may be living at the time of distribution," &c., &c.; and directing in the third clause that the annual income derived from the rest of said property be used in the education and raising of his children; and if this should be insufficient, then all the lands of the estate of R. N. Lewis outside of the city of Columbia be sold to answer that purpose.

As has already been stated, Sarah B. Lewis qualified as executrix of this last will, and becoming thereby executrix also of the first, sold and conveyed the real estate in question to the defendants, Tappan and Gary, for $10,000, which sum was afterwards paid to her by the said purchasers. These purchasers afterwards mortgaged the premises to one Asa Burke, now deceased, of whose estate the defendant Dial is the administrator with the will annexed.

Was the sale of Sarah B. Lewis, executrix, to Tappan and Gary a valid sale? There is no doubt Sarah B. Lewis made the sale as executrix of Robert N., and it is also certain that she received the full amount of the purchase money as said executrix, and there is some evidence that she used it for the purposes of the estate; but the question recurs, Did she have the power to sell? It will not be questioned that up to the recent act of 1880, the executor of an executor represented the first testator, in this state, as in the other states. This has been familiar law, announced in many decided cases and found in all the text books upon the subject, and it prevailed in our state, as elsewhere, until the act above referred to, which was passed in 1880, since the occurrences here-

in, and therefore having no application here. Under this principle Sarah B. Lewis, when she qualified as executrix of her husband, became *eo instanti*, it will be conceded, executrix of Robert N., and was thereby invested with all the powers, under the will of the said Robert, with which her husband *as executor* thereof had been clothed. I mean all such powers as belonged to him as executor, and with which he had been intrusted by his testator, to the proper discharge of his duty as said executor. "The executor of an executor is to all intents and purposes the executor and representative of the first testator." 2 *Black. Com.*, 506. If so, he can certainly do all that the first executor, as executor, could do.

This then brings us to the question, whether Daniel B. could have made this sale as executor of his brother Robert, in the discharge of his executorial duties and functions, or was the power of sale, which it is admitted the will of Robert conferred upon him, a mere naked power, independent of and unconnected with his office as executor? Was it a mere personal trust in Daniel as an individual, and to be exercised by him, and by him alone, as an individual and not as executor? If the power conferred was of this latter kind, then it died with him, and the sale made by his executrix was without authority, and therefore illegal and void. But if it was of the former character, then it was transmissible, and the will of Daniel continued it, and kept it alive, and his executrix having exercised it, her conveyance is legal, and therefore binding upon all the parties in interest.

The turning point then is, using the ordinary terms in such cases, was the power conferred a naked power, or was it coupled with a trust? This is always a question of intention, which can be determined only by reference to the terms of the will; for, as was said in *Franklin* v. *Osgood*, 14 *Johns.*, 527, "A reference to the terms of the will is the only course by which to determine whether a naked power only is intended to be given, for even if the terms made use of in creating the power, detached from other portions of the will, confer merely a naked power to sell, yet if the other provisions of the will evince a design that, at all events, the lands are to be sold in order to satisfy the whole intent of the will, it is not a naked power, but is coupled with a trust and in-

terest." "A power to sell for the payment of debts would be such a power." 1 *Sug. Pow.*, 111, note.

In *DeSaussure* v. *Lyons*, 9 *S. C.*, 499, this court drew the distinction between a naked power and a power coupled with an interest in trust, holding the former to be an individual power, and to be exercised only in the manner authorized by the creator, and the latter to be attached to the interest or trust reposed, and consequently to be moulded by the character of that interest or trust—concluding that when a power of sale, for instance, is found conferred in the will upon the executor, as a material part of the means placed in his hands by the testator for carrying out the provisions of the will, it attached to the office of executor and not to the individual named. So that in such case, any one holding the office became at once, by virtue of that fact, invested with the power. This principle is sustained in that case by the citation of numerous cases where it was enforced.

Now looking at the will of Robert N. Lewis as a whole, and especially to the terms of the fourth clause, it seems clear that the power of sale was attached to the office of his executor, and was conferred solely as a means of carrying out the provisions of the will. The will is simple in terms and easily understood. It directs the debts to be paid, then a certain lot is devised to Emily Bateman and her son Nicholas, and $5,000 in cash is bequeathed to her for herself and child; then the rest, remainder, and residue to Daniel B. Lewis, his brother, in trust, to be divided equally among the children of his said brother. Then the appointment of Daniel B. as executor, with full power to execute the will, and in express terms, with full power to sell any of his real estate or personal except the lot devised to Emily Bateman.

Now what other purpose could the testator have had in view in conferring the power to sell any portion of his estate upon the executor, except as a means of discharging his duties as such executor? It was incumbent on the executor to pay the debts and to pay to Emily Bateman the sum of $5,000. It was also his duty to turn over the remainder, rest, and residue to the trustee for the use, benefit, and behoof of his children, so as to be divided amongst them, share and share alike, and so that the proceeds might be invested at the discretion of the trustee; or, at least, we

are at a loss to see what other object the testator had in giving this full power, so explicitly expressed, to the executor but to enable him to put the estate in a shape to meet the requirements in the will, to wit, the payment of debts and of the legacy to Emily Bateman, and an equal division of the remainder among the children, their shares to be held by a trustee, and subject to investment at his discretion. It certainly could not have been intended as a mere naked power conferred upon Daniel B. Lewis as an individual, and with no object in view.

Powers like this may be divided into three classes: 1. A naked common law power, like a power given to an attorney or agent, to do any act; 2. A power coupled with an interest in the donee; and 3. A power which, when detached from the other parts of the will in which it is found conferred, would seem to be a mere naked power, but yet, when the whole will is considered, it appears that it was conferred to satisfy the whole intent thereof, and was intended to enable the executor to exercise fully his executorial duties. In the first class no one but the party named can execute the power, and upon his death it expires. *Co. Litt.*, 112, 113, 181; *Shep. Touch.*, 429; *Powell Dev.*, 292, 310. In the other two the power survives and is transmissible, and when vested in an executor may be exercised by his executor. *Bergen* v. *Bennett*, 1 *Cai. Cas.*, 15; 3 *Salk.*, 277; 3 *Atk.*, 714; 2 *P. Wms.*, 102; *Brent's Case*, *W. Jones*, 252; *Cro. Car.*, 282; *Powell Dev.*, 297, 307; *Sug. Pow.*, 141; *Cro. Car.*, 382; *Cro. Eliz.*, 26; 3 *Binn.*, 49.

We regard the power in the case before the court as belonging to the last class. It was certainly more than a mere power of attorney to sell, which could be exercised only by the party named for his principal, and it does not therefore belong to the first class. But there was no legal interest in the property given to the executor; on the contrary, the legal title was given to D. B. Lewis as trustee, to be held by him as such trustee for the use and benefit of his children; and therefore it was not a power coupled with an interest in the sense that the executor was entitled to any portion thereof. This excludes it from the second class. It was a power, however, coupled with a trust, the trust being the executorship, and it was conferred upon the office of

executor so as to enable the party filling that office, whoever he might be, to properly discharge its functions and duties, and therefore it is of the third class.

The weight of authorities hold that such a power survives, and is transmissible. Our conclusion therefore is, that this power having been exercised by the executrix of D. B. Lewis as executor of Robert N. Lewis, her sale to Tappan and Gary is unimpeachable, at least for the want of authority. *Franklin* v. *Osgood*, 14 *Johns.*, 553, and the cases there cited; *Uldrick* v. *Simpson*, 1 *S. C.*, 283; *Co. Litt.*, 113, note *a*; *Taylor* v. *Benham*, 5 *How.*, 233; *Drayton* v. *Grimke*, *Bail. Eq.*, 392.

Did the will of D. B. Lewis limit the power of his executrix in the execution of the will of Robert N. ? Waiving the question whether the executor of an executor can only exercise such duties and powers with reference to the first estate, as the second testator may authorize him to exercise, yet we do not find any limitation placed by D. B. Lewis on the powers of his executrix as to the will of Robert N. D. B. Lewis recognized the fact that his executrix would become the executrix of his testator, Robert N., and seeing possibly that it might become necessary to sell some of the real estate for the education and raising of his children, he decided that if such became necessary, that the lands outside of the city of Columbia should be sold; but there is no inhibition interposed as to the general power of sale found in the will of Robert. That was left intact. And if, as we have concluded, it was a power *virtute officii*, when the office was created by Robert N. in his will, it remained a part of that office as long as the same existed, or at least so long as the duties of said office required it to exist, for their proper discharge.

We think the Circuit judge erred in charging the jury that the power of sale conferred in the will of Robert N. was a special trust and confidence in his brother, which he could not devolve, and that when he died the trust ended. On the contrary, we think this power was attached to the office of executor, and Mrs. D. B. Lewis having become by operation of law in possession of said office, she was legally authorized to execute this power; and having done so by the sale to the defendants, Tappan and Gary, said sale is valid.

After reaching this conclusion, the other .questions raised in the case disappear, and therefore need not be considered.

It is the judgment of this court, that the judgment of the Circuit Court be reversed.

---

A petition was filed for a rehearing of this case, but it was refused by an order passed April 26, 1884,

PER CURIAM.—We have carefully considered the petition for rehearing filed in this cause, and do not see that any errors or omissions in the former judgment are made to appear *prima facie.* Nor do we see that any new views are suggested which require the further consideration of the court. The judgment of this court is, that the petition for rehearing be dismissed.