BEST v. DEASON *ET AL.*

(119 S. E., 509)

TRUSTS—CONVEYANCE BY TRUSTEE, PROCEEDS OF WHICH WERE TURNED
    OVER TO BENEFICIARY FOR INVESTMENT, HELD VALID —Property was
    conveyed to a trustee for the sole and separate use of trustee's sis-
    ter for life and on her death was to be divided among her children,
    and if she died leaving no children, the principal was to return
    to the estate of her parents.   The trust deed authorized a sale
    of the land, and a reinvestment of the proceeds according to the
    direction of the parents and upon their written consent.  *Held* that
    a conveyance in fee simple by trustee, pursuant to the parents,
    directions, the proceeds of which were turned over to beneficiary,
    was valid, regardless of the investment made with the proceeds.

Before P. F. HENDERSON, SPECIAL JUDGE, Barnwell, De-
cember, 1922.   Affirmed.

Action by Martin C. Best against R. A. Deason and
others.   From an order sustaining a demurrer to the answer
of A. P. Aldrich, and overruling a demurrer to the com-
plaint, the defendant A. P. Aldrich appeals.

The decree of Special Judge P. F. Henderson, referred to
in the opinion of Mr. Justice Fraser, follows:

The controlling question presented by the demurrer to
the answer of the defendant, A. P. Aldrich, is whether or
not under the terms of the deed from Lewis M. Ayer to
Robert Aldrich, which is dated the 29th day of December,
1886, the subsequent conveyance, upon the written request
of A. P. Aldrich and M. A. Aldrich, by the trustee, Robert
Aldrich, to Alfred Aldrich, was legal.

The pleadings revealed the fact that the realty, which is
the subject matter of this action, and other lands similarly
affected, all of which is now quite valuable, was conveyed
under the aforesaid deed by Lewis M. Ayer to Robert Al-
drich "in consideration of the sum of $3,345.90 to me in
hand paid by Alfred P. Aldrich and Martha A. Aldrich, his
wife." and that said deed was made "in trust for the sole
and separate use of his sister, Rosa, for and during her nat-

ural life, and after her death to be equally divided among her children." And then follow two paragraphs in said deed, which add important items to the trust upon which said deed is made. These paragraphs read as follows:

"But if the said Rosa should die without leaving a child or children alive, then in trust to be returned to the estate of the said A. P. and M. A. Aldrich, to be divided under the provisions of his or her will, and if no will as the law may direct. And on the further trust that the said land may be sold and the proceeds thereof reinvested as the said A. P. and M. A. Aldrich may direct, their consent being first obtained in writing, or if they be dead, by the consent of the said Rosa, approved by the said Robert, said consent and approval being in writing without the necessity of applying to the Court for that purpose."

On the 26th day of December, 1889, A. P. Aldrich and M. A. Aldrich in writing, requested and directed Robert Aldrich, the trustee, to sell and convey the property described in the deed from Lewis M. Ayer, for a consideration of $5,000, to Alfred Aldrich, and directed him specifically "upon the receipt of said purchase money to transmit the same to the said Rosa, *cestui que* trust, under said trust deed, to be by her reinvested in such other property as she may elect."

Acting under this written direction and consent of A. P. Aldrich and M. A. Aldrich, Robert Aldrich did duly convey the property in question to Alfred P. Aldrich.

My construction of the papers above recited is that A. P. Aldrich and M. A. Aldrich out of their own funds purchased and paid for the realty in question, intending to buy the same primarily for the benefit of their daughter, Rosa; providing, however, in the trust deed, in effect, that if other disposition were not made of the property during the lifetime of Rosa that the remainder over therein should go to her children living at her death. But the said A. P. Aldrich and M. A. Aldrich further desired and provided, inasmuch

as they had paid the purchase price for the property, that should Rosa die and leave no children that the property should revert to the estate of A. P. and M. A. Aldrich. This provision, to my mind, shows an intention upon the part of A. P. and M .A. Aldrich to retain in themselves some measure of interest in and control over the property.

Then follows the very important paragraph in the deed in which it is provided that the trustee may sell the property upon the written request of A. P. Aldrich and M. A. Aldrich. My construction of this paragraph of the deed is that A. P. Aldrich and M. A. Aldrich realized that contingencies might arise, by virtue of which it might be necessary materially to change the method of investment, and that they carefully provided in the trust deed that should this contingency arise that by directing and requesting the trustee to act that they might make any change, no matter how sweeping, in the investment as they might desire to make. All that it was really intended to give Rosa's children under the trust deed was a remainder, if A. P. and M. A. Aldrich did not exercise the power reserved to them.

The contingency which they had foreseen seems to have arisen in 1889, when their daughter, Rosa, had removed to the State of California, as is set out in their written direction to the trustee, dated the 26th day of December, 1889. Rosa's welfare was their first consideration, and they then directed the trustee in writing to sell the property, and to transmit the proceeds to Rosa "to be by her reinvested in such other property as she may elect." I think that such a reinvestment was in conformity with the general plan of the trust deed, and I hold that the plan outlined and provided for in the trust deed has been strictly followed in the written request and in the deed from Robert Aldrich to Alfred Aldrich.

The important remaining question is whether the plan provided in the trust deed, and later strictly followed by the interested parties, was legal. Inasmuch as it is a well-

known fact that the interested parties were amongst the foremost citizens of the State of South Carolina, the grantor being General Lewis M. Ayer, the original investors being Judge A. P. Aldrich and his wife, and the trustee being Col. Robert Aldrich, who later became one of the most brilliant Circuit Judges of this State, he and the aforesaid Judge A. P. Aldrich constituting two of South Carolina's ablest jurists—in view of these circumstances it would seem more than passing strange if a plan of action which was devised by, or at least participated in, by such brilliant lawyers as these should be found to be defective, illegal, or in any manner fraudulent, as is suggested by the answer of the defendant, A. P. Aldrich, Rosa's son.

· This consideration, while it may be persuasive to a certain extent, is by no means to be considered controlling in our inquiry. The vital question is a cold question of law, namely, as to whether or not the plan followed in attempting to give to the purchaser a fee simple title, was legal, or was, on the other hand, in contravention to the law of trusts?

Let us then consider this interesting question to which I I have given considerable thought and independent research, as supplementary to the learned arguments of counsel. My general idea of matters of this kind is that unless some well-settled principle of law is transgressed, that the province of the Court in considering trust matters especially, is simply to determine the real intention of the parties. This idea is well expressed in 26 R. C. L., at page 1289, as follows: "The provisions and conditions of the instrument creating the trust make the law by which the conduct of the trustee in the management and disposition of the trust property must be regulated and controlled." This general principle is recognized and followed in *Foster v. Glover*, 46 S. C., 522; 24 S. E., 370.

The trust deed herein gives Robert Aldrich a full power of sale, subject, however, to the written direction and consent of his father and mother, Judge A. P. Aldrich and

9—S. C.—126.

Mrs. M. A. Aldrich, who had paid General Ayer for the land. This kind of a trust, in which the power of sale is to be exercised only upon the direction and at the request of some other person save the trustee, presents no new principle, but is met with by the Courts quite frequently.

In South Carolina we have instances of the same in such cases as *Creighton v. Pringle*, 3 S. C., 77. *Rice v. Bennett*, Speers, Eq., 579; 42 Am. Dec., 336, and *Pyron v. Mood*, 2 McMul., 281. In each of these cases the request of the beneficiary was required to the exercise of the power of sale, and, when this request was given, the purchaser's title to the property conveyed by the trustee was considered complete even against remaindermen.

Passing to other authorities, it will be seen that the party whose consent is the controlling feature in the exercise of a power of sale need not necessarily be the beneficiary, but may be some third person.

Judge Freeman, in a full editorial note found in 19 Am. St. Rep. at page 278, says: "The creator of a trust, the trustee of which is to have a power of sale, may impose any restraint upon such power which he may consider proper, and unless it is in contravention of law, its observance is essential to the valid execution of the power. * * * Thus a trustee may be given power to sell, subject to the approval of the person who created the trust, or with the assent of the beneficiary, or of the tenant for life, or of some other person. If, so, the power is not in being in the absence of such approval or assent, and any conveyance which the trustee may make is unwarranted. *Sprague v. Edwards*, 48 California, 239. *Mortlock v. Buller*, 10 Ves., 308. *Bateman v. Davis*, 3 Madd., 98. *Wright v. Wakeford*, 17 Ves., 454; Rickett's Trust, 1 Johns & H. 70."

In the Alabama case of *Gindrat v. Montgomery*, 82 Ala., 596; 2 South., 327; 60 Am. Rep., 769, a power of sale upon which the written request of a third person was required

was upheld and recognized as valid even against the interest of remaindermen.

There are two Georgia cases which, to my mind, are pertinent in this inquiry. *Headen v. Quillian,* 92 Ga., 220; 18 S. E., 543. In his case property was conveyed to a trustee for the benefit of Eliza Headen during her life, with remainder over to her children "with power of the said Eliza Headen to empower the trustee by writing under her hand to sell any part or whole of the trust property." It was held in this case against the remaindermen—the children of Eliza Headen—that a sale upon Eliza's request vested a fee-simple title in a purchaser. It is true that in this case there was a reinvestment upon the terms of the original deed, but the principle which I refer to herein is the complete recognition by the Georgia Court of the right of a person other than the trustee to completely control the action of the trustee.

The other Georgia case which I refer to goes much further, and, while not entirely parallel to the present action, is very closely akin to it. I refer to the case of *Vernoy v. Robinson,* 133 Ga., 563; 66 S. E., 928. In that case a trust deed to a trustee was executed, which provided that the wife of the grantor, Martha Ann Robinson, should have the property during her life and at her death "all the property, as well what is hereby conveyed as what may be exchanged for as aforesaid, will go to such child or children as she may leave surviving her at her death, to be equally divided amongst them." The trust deed in said case, however, provided further, "that should the said Martha Ann Robinson at any time require under hand and seal by writing  *  * *  that any part or all of the above-named property shall be sold or exchanged for other property, or mortgaged for the purpose of raising money for her [own] use  *  *  * that the  *  *  * trustee shall execute all proper conveyance or conveyances for the purpose aforesaid." Martha Ann Robinson was later, upon the death of the trustee

first appointed, substituted as trustee, and she conveyed without reinvestment the property in question, and evidently used the proceeds of sale for her own purposes, thereby cutting off completely any beneficial interest that the remaindermen would otherwise have received. It is true that there was an order of Court involved in the case permitting the sale of the property, but the Supreme Court of Georgia in its decision held that the decree of Court was in effect void, as the remaindermen were not made parties to the proceeding. But the Supreme Court of Georgia held that Martha Ann had the power under the terms of the original trust deed to convey the property even without making reinvestment, without the assistance of the Court.

Hence I return to the observation first above made, that the real intention of the parties is the controlling consideration, and that if no well-known principle of law is violated, that the transaction will be upheld if the intention of the trust deed is faithfully followed.

The contention of the defendant, A. P. Aldrich, Rosa's son, that the plan followed by his grandfather, Judge A. P. Aldrich, and others involved, is that he gave him an estate in remainder in the property, and later deprived him of the same. I think that the possibility of such a contingency arising was contemplated in the original trust deed, namely, that Judge A. P. Aldrich and his wife reserved to themselves the power of providing such a reinvestment of the funds as they might see fit to have made. I see no reason why this is not legal.

I further particularly call attention to the fact that so far as the demurrer is concerned that there is no showing whatsoever that the proceeds of the sale may not have been reinvested in California upon the exact terms of the original trust deed.

Counsel for the defendant, A. P. Aldrich, cited the decision of United States Supreme Court in the case of *Wormley v.*

*Wormley,* 8 Wheat., 421; 5 L. Ed., 651, to the effect that in certain instances a purchaser is charged with seeing to the reinvestment of trust funds. I think and hold, however, that under the reasoning of that decision and specifically under such decisions as *Campbell v. V. C. Co.,* 68 S. C., 345; 47 S. E., 716, and *Price v. Kransnoff,* 60 S. C., 72; 38 S. E., 413, that in this particular case the purchaser would not be bound in any manner to see to the reinvestment of the funds, because it was in the power of Judge A. P. Aldrich and his wife, in my opinion, under the papers herein, to direct a reinvestment such as they did direct. The proposed reinvestment required the exercise of discretion by the party making it, and must take some time to be effected.

Along the same line counsel for the defendant, A. P. Aldrich, cite the South Carolina cases of *Rabb v. Flenniken,* 29 S. C., 278; 7 S. E., 597, and *Salinas v. Pearsall,* 24 S. C., 179, and similar decisions to the effect that Alfred Aldrich, the purchaser, was affected by the transaction herein with notice that a reinvestment upon the terms of the original trust deed was not intended, and that he knew that such an investment was not to take place.

These cases are differentiated from the present case by the fact that in the cases above cited the trust deed provided that the trustee must reinvest the proceeds of the sale in property, upon the same terms as were set out in the original trust deed. In the present case the provision of the trust deed is simply that "the land may be sold and the proceeds thereof reinvested as the said A. P. and M. A. Aldrich may direct." Hence, in my opinion, the principle of *Rabb v. Flenniken* and other similar cases does not apply to the case at bar, for the simple reason that when Alfred Aldrich was advised that a reinvestment along lines directed by A. P. Aldrich and his wife was to take place, that this was all-sufficient, and that it was not his duty to follow the matter further.

Again, counsel for A. P. Aldrich object to the plan followed, because it worked, as they express it, a destruction of the trust, and because Alfred Aldrich, the grantee, had knowledge that a destruction of the trust was intended. The decision of the Supreme Court of South Carolina in the case of *Thomson v. Peake,* 38 S. C., 440; 17 S. E., 45, 725, to the effect that, "Not only is a trust indestructible, but it is not transferable upon the mere volition of the trustee," is relied on.

An examination of the opinion in the Peake Case, however, reveals the fact that the reference made by the Court is to the possibility of a trustee himself attempting to destroy a trust, and that the principle does not in any manner extend to what was done in the case at bar.

Again, counsel for the defendant, A. P. Aldrich, contend that the plan followed by the Aldrichs herein was illegal, because it permitted reinvestment by Rosa Aldrich, instead of requiring the same to be made by Robert Aldrich, the trustee. I think and hold that the direct answer to this contention is that the trust deed did not necessarily require that Robert Aldrich, the trustee, should make the reinvestment. Most trust deeds do require the trustee to make the reinvestment. This one did not. It simply provided that the proceeds of sale be "reinvested as A. P. and M. A. Aldrich may direct." They directed that Rosa make the reinvestment. I hold that this, while possibly unusual, was legal under the terms of the trust deed.

Again, counsel for A. P. Aldrich contend that permitting the removal of the trust fund and reinvestment in the State of California, and beyond the jurisdiction of the Courts of the State of South Carolina, renders the whole proposition void, and they cite the South Carolina case of *Carr v. Bredenberg,* 50 S. C., 471; 27 S. E., 925, in support of this proposition. An examination of this case, however, reveals the fact that the case is an elucidation of the principles upon which a Court of equity will handle trust property

which such Court is administering, and does not affect a case in which the trust deed gives a perfect power of sale, and fully establishes the method upon which the sale may be made. Indeed, the express desire and intention of the parties to the trust deed herein was to avoid the necessity of applying to the Court.

To summarize:

My conclusion, after careful study of this case, is that the deed by the trustee, Robert Aldrich, to A. P. Aldrich, was made strictly in accordance with the terms of the trust deed, and was based upon a valid request, under the terms of the trust deed from Judge A. P. Aldrich and his wife; that the provisions as to reinvestment was in accordance with the terms of the trust deed, and that at least there was no duty whatsoever upon the part of Alfred P. Aldrich, the grantee, to follow the investment of the fund in California, where the same may or may not be invested upon the terms of the original trust deed. I do not think that the question of what investment was made in California would control this action, however.

As to the question of fraud: The answer alleges fraud only in that the sale was made upon a consideration which "was grossly inadequate."

I am not unmindful of the recent decision of the Supreme Court of South Carolina in the case of *Sams v. Sams,* 117 S. C., 312; 108 S. E., 921, which is based upon the older case of *Amaker v. New,* 33 S. C., 28; 11 S. E., 386; 8 L. R. A., 687, which decisions are to the effect that although longer than six years may have elapsed since the discovery of an alleged fraud which might vitiate a conveyance of land, that still a defendant may treat such a conveyance as null and void when it is set up against his interest. These cases differentiate the present case from the decision of the Supreme Court of South Carolina in *Smith v. Linder,* 77 S. C., 535; 58 S. E., 610, cited to the effect that the discovery of fraud within six years must be pleaded. Hence

the fourth ground of demurrer to the answer must be over-ruled.

But I further hold, and the same is controlling so far as the question of fraud and also so far as the contention that A. P. Aldrich and his grantees became trustees of a constructive trust is concerned, that there was no illegality in the plan devised by or acted upon by the Aldrichs herein; that Judge A. P. Aldrich and his wife (Robert Aldrich, the trustee, acting with them) were the sole judges of what was an adequate consideration for the sale of the property; that they were within their rights when they determined that $5,000 was an adequate consideration, and hence that an allegation now made by the defendant, A. P. Aldrich, that the same was a grossly inadequate consideration does not and cannot raise an issue of fraud, because he is not in a position to raise such an issue.

As I have just stated, the same completely disposes of the contention as to the existence of a constructive trust in Alfred Aldrich and his grantees under the doctrine enunciated by the Supreme Court of South Carolina in *Bradley v. Calhoun,* 116 S. C., 7; 106 S. E., 843, based upon *Sullivan v. Latimer,* 35 S. C., 422; 14 S. E., 933. This doctrine comes into play only where the purchase was wrongful and inequitable when made. I hold in this instance, however, that the plan pursued was legal throughout. Hence the demurrer to the answer is sustained.

A demurrer was also interposed to the complaint. The foregoing consideration fully states my views as to the transaction involved. This demurrer might be sustained. I, however, think that inasmuch as all parties claiming any interest in the property in question are before the Court and represented by counsel, a better solution of the proposition is not to sustain the demurrer to the complaint, but to permit this action to go to complete adjudication, thereby setting at rest for all time the question of the validity of the title to the valuable tract of land involved herein.

Wherefore it is ordered, adjudged, and decreed, that the demurrer to the answer of A. P. Aldrich be and the same is hereby sustained, but that the demurrer directed to the complaint be and the same is hereby overruled.

*Messrs. Holman & Boulware* for appellant, cite: *Direction was not in conformity with power of sale in deed:* 69 S. E., 518; 14 S. E., 933; 24 S. C., 179; 7 S. E., 597; 21 S. E., 115. 2 Perry Trusts, Sec., 511–a,. 777, 783;. 5 L. Ed., 651; Pom. Eq. Sec., 1062; 28 A. & E. Enc. L., 88; 19 A. S. R., 278; Speers Eq., 579. *Attempted change of trustees made A. P. Aldrich and Successors constructive trustees:* 17 S. E., 45; Pom. Eq. Secs., 1068–69; Speers Eq., 579; 27 S. E., 925; 105 S. C., 329; 5 Rich. Eq., 270; 7 L. Ed., 157; 1 Civ. Code 1912, Sec., 3542; Pom. Eq., 1048; 27 A. & E. Enc. L., 250.

*Messrs. Brown & Bush* for plaintiff-respondent, cite: *Equity will not require vendee to risk vendors solvency:* 65 S. E., 496; Pom. eq., Sec. 274.

*Mr. J. O. Patterson, Jr.,* for certain respondents, cites: *Beneficiaries will not suffer from right of trustee to exercise power:* 1 Rich. Eq., 324; Pom. Eq. Sec.,1002, 1048; 18 S. E., 543; 66 S. E., 928; 33 S. C., 414; 60 S. C., 168; 68 S. C., 445; 68 S. C., 299; 23 S. C., 500. *Statute of Limitations:* 77 S. C., 535.

*Messrs. Harley & Blatt* for respondent Deason cite: 3 Pom. Eq. Sec., 1002.

October 12, 1923.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The decree of the Special Judge is so clear and conclusive that little need be added. Let the order be reported.

It is true that a trust cannot be destroyed. There was no attempt to destroy the trust. The intention or meaning of the deed of A. P. Aldrich and M. A. Aldrich to Robert

Aldrich, trustee, is clear and unmistakable. It is very clear that A. P. Aldrich and M. A. Aldrich intended to make a provision for their daughter, Rosa. It is also clear that they intended to save her from all possibility of a controversy with any husband, and to keep the management entirely out of her hands for her own benefit. There was no use, to demand of her that she should do anything, so the deed deprived her of any right to manage or dispose of the property. A sale was provided for as it might become useless to her in its present form. The money derived from the sale was to be reinvested, it is true, but only as A. P. Aldrich and M. A. Aldrich may direct. No one had a right to complain of a failure to reinvest, except one who has some right in the property, or the proceeds of sale. No one had such a right. not even the daughter, Rosa. Rosa and those claiming under her cannot complain, because Rosa accepted the proceeds of sale. The sale and paying the money to Rosa was not only not a destruction of the trust, but was a carrying out of the trust in its fullest purpose.

The judgment is affirmed.

Mr. Chief Justice Gary and Mr. Justice Watts Concur.

Mr. Justice Marion concurs in result.

Mr. Justice Cothran (dissenting). I regret exceedingly that I cannot agree with the conclusions of Special Judge Henderson and Mr. Justice Fraser in this case, with the accumulated embarrassment that my disagreement is oppossed to the evident conclusions of Hon. A. P. Aldrich and Hon. Robert Aldrich, both formerly Circuit Judges of this State, of eminent ability, of unquestioned integrity, and most amiable qualities.

My reasons follow: This is an action by the plaintiff, a purchaser of a part of certain real estate, conveyed by Lewis M. Ayer to Robert Aldrich, trustee, on December 29, 1866, for the purpose of having the rights of the several parties judicially determined. The defendants, other than

A. P. Aldrich (the third of that name), are purchasers directly or indirectly from A. P. Aldrich (the second of that name), to whom the entire tract (of which the smaller tracts immediately affected by this litigation are parts), was conveyed by the trustee under the Ayer deed. There is confusion in the record for appeal as to the date of this last conveyance; in the answer of A. P. Aldrich, 3d, it is given as October 1, 1889; in the decree it is given as subsequent to December 26, 1889, the date of the written directions from A. P. Aldrich,. (the first of that name), and M. A. Aldrich to Robert Aldrich, the trustee, authorizing him to sell the premises; and in the answer of A. P. Aldrich 3d, it is alleged that it was conveyed under said direction. It will be assumed, therefore, that it was executed after, and under the said written direction. The defendant A. P. Aldrich, 3d, is the only child of Mrs. Rosa Aldrich, the life tenant under the Ayer trust deed; she died after this action was commenced. He claims the entire property under that trust deed as remainderman.

The undisputed facts of the case are as follows: On December 29, 1886, A. P. Aldrich, 1st, and his wife Mrs. Martha A. Aldrich, purchased a large tract of land, 690 acres, from General Lewis M. Ayer, at the price of $3,345-.90, which they, it seems, together paid. Obviously by their direction, the deed was made to their son Robert Aldrich, as trustee, "in trust for the sole and separate use of his sister Rosa, for and during her natural life, and after her death to be equally divided among her children who may then be alive, share and share alike, the child or children of a deceased parent to take among them what their parent if alive would have been entitled to." The deed contained also the following provision:

"But if the said Rosa should die without leaving a child or children, then in trust to be returned to the estate of the said A. P. Aldrich and M. A. Aldrich to be divided under the

provisions of his or her will, and if no will, as the law may direct."

It contained also the following:

"And on the further trust that the said land may be sold and the proceeds thereof reinvested as the said A. P. and M. A. Aldrich may direct, their consent being first obtained in writing, or, if they be dead, by the consent of the said Rosa, approved by the said Robert, said consent and approval being in writing, without the necessity of applying to the Court for that purpose."

On December 26, 1889, A. P. Aldrich, 1st, and M. A. Aldrich executed a formal instrument in writing, under their seals, witnessed, probated, and recorded, in which, after fully reciting the terms of the trust deed, they declared that:

"We　＊ ＊ ＊　do hereby direct the said Robert Aldrich, trustee as aforesaid, to sell and convey the said land unto Alfred Aldrich, for the sum and price of $5,000, and upon receipt of said purchase money, to transmit the same to the said Rosa, *cestui que* trust under said trust deed, to be by her invested in such other property as she may elect, and this shall be our direction and consent therefor; and upon the transmission of said money to the said Rosa as hereinabove directed, the said Robert shall be discharged from further liability and accountability under said trusteeship."

It appears, as above indicated, that under said direction, Robert Aldrich, as trustee, conveyed the entire property, some 690 acres, to Alfred Aldrich (A. P. Aldrich, 2d), received from him the authorized purchase price, $5,000, and transmitted it to Mrs. Rosa Aldrich, who had in the meantime moved to California.

By conveyances, either directly or indirectly from A. P. Aldrich, 2d (the record for appeal not disclosing), the defendants B. L. Easterling and J. M. Easterling came into possession respectively of the two smaller tracts here involved, and by several deeds conveyed them to the defendant Deason, who conveyed them to the plaintiff Best. Best

paid a part of the purchase price, and gave Deason a mortgage to secure the remainder. Some doubt having arisen as to the validity of the title, Best instituted this action to have the matter set at rest.

The defendants Deason and the Easterlings demurred to the complaint upon certain grounds which need not be specified or considered, as the Circuit Judge overruled their demurrer, and no exception was taken by them to his order.

The defendant A. P. Aldrich, 3d, son of Mrs. Rosa Aldrich answered the complaint, setting forth the various matters heretofore detailed, and claiming that the written declaration of A. P. Aldrich, 1st, and Mrs. M. A. Aldrich, was insufficient to authorize and empower Robert Aldrich as trustee, to make a valid conveyance of the property to A. P. Aldrich, 2d, free of the trust created by the Ayer trust deed of December 29, 1866, in that it was contrary to and in violation of the trust deed, in the following particulars: (a) The said direction constituted a destruction of the trust, and a delivery of the trust property to one entitled to the use thereof for life only; (b) it constituted an unauthorized and unlawful and void change of the trustee named in the trust deed; (c) it effected a removal of the corpus of the trust to another state.

It is assumed that this answer was served upon the codefendants of A. P. Aldrich, 3d; at any rate, they demurred to it, and the matter came up for a trial before Hon. P. F. Henderson, Special Judge. He held a decree sustaining the demurrer, which in effect amounted to a decree in favor of said codefendants, and a denial of the injunction, which the plaintiff asked for against the enforcement of the mortgage which he had given. From the decree of Special Judge Henderson, the defendant, A. P. Aldrich, 3d, has appealed upon exceptions which fairly raise the questions hereinafter considered.

When Judge Aldrich and Mrs. Aldrich, in 1866, purchased the land from General Ayer, and paid the purchase money,

they had the right to demand and receive from him a deed in fee simple for the land; it is equally clear that they had the right to forego this right and create a trust for their daughter Rosa and her children. The trust deed was manifestly executed by General Ayer to Robert Aldrich, trustee, at the direction of Judge and Mrs. Aldrich, and in pursuance to their purpose to establish the trust. When that purpose was consummated by vesting the fee-simple title in Robert Aldrich, as trustee, the title, legal and equitable, passed by Judge and Mrs. Aldrich, and vested in the trustee for the purposes of the trust, leaving Judge and Mrs. Aldrich with absolutely no interest in the land except that which became a part of the trusts created by the deed, a contingent equitable estate in fee in the event that their daughter Rosa should die without leaving a child or children alive. Any right which they might thereafter claim, to change the terms of the trust, or to do any act in reference thereto not specifically permitted by the trust deed must necessarily be denied.

That the deed created an executory trust, and was not executed by the statute, appears indisputable. It contemplated that Rosa should have the sole and separate use of the land for life, and at her death it was to be equally divided among her children; this may not necessarily have meant that the trustee was to make that division; but there are other duties imposed which prevented the execution of the trust. The provision alone for a sale by the trustee and a reinvestment of the proceeds, was sufficient to prevent the operation of the statute. *Boney v. Cornwell,* 121 S. C., 256; 113 S. E., 686, and an array of authorities cited therein.

It is equally clear that under the trust deed, the daughter took an equitable life estate, with contingent remainders to her children who might at her death be alive, share and share alike, and *per stirpes.*

The life tenant is dead, leaving only one child, the defendant A. P. Aldrich, 3d. He took under the trust deed a contingent, equitable, fee-simple estate, in remainder, con-

tingent upon his surviving his mother, which he has done. Having a contingent remainder in the estate prior to the execution of the deed from Robert Aldrich, trustee, to A. P. Aldrich, 2d, the question is: Has it been annihilated by that deed?

It could only have been annihilated, so far as this particular property is concerned, by an act of the trustee in conformity with the terms of the trust deed. Unquestionably, if it had been deemed advisable by Judge and Mrs. Aldrich that the property should be sold and the proceeds reinvested, the trustee would have had the power, upon their written consent and direction, to sell it and convey a good title; and doubtless under those circumstances the purchaser would not have been responsible if the trustee had not reinvested the proceeds as the trust deed requires; and, if the proceeds had been reinvested in other property, the trustee would the same trust as originally created.

It does not require argument to support the proposition that the authority of the trustee to sell and reinvest the proceeds of sale in other property carries the implication that such other property should be held by the trustee subject to the same trust as originally created.

In the concurring opinion of Mr. Justice Woods, in the case of *Rice v. Coleman,* 87 S .C., 342; 69 S. E., 516; Ann. Cas. 1912B, 1016, it is said:

"Every power of sale conferred by a will has attached to it by law as a condition of its exercise that it shall be used only in the discharge of the testamentary trust imposed by the will. Adopting the language of the Court in *Reeves v. Tappan,* 21 S. C., 1: 'It was a power coupled with a trust the trust being the executorship, and it was conferred upon the office of executor so as to enable the party filling that office, whoever he might be, to properly discharge its functions and duties.' "

It seems an easy step to a similar conclusion, in the case of a power of sale conferred upon a trustee. If there had

not interposed the direction of Judge and Mrs. Aldrich, attempting to modify the implied duty of the trustee to sell and reinvest for the purposes of the trust, there would not have been a question as to the power and duty of the trustee in this case. That they had surrendered this power, in the creation of the trust, appears too plain for discussion.

The case last cited was decided by a divided Court; but the following extract from the dissenting opinion of Mr. Justice Hydrick, concurred in by Mr. Chief Justice Jones, taken in connection with the quotation above from the opinion of Mr. Justice Woods, shows that there was no difference of opinion upon that point:

"While the power conferred on the executors to sell the real estate is ample, still it is a naked power, and should be construed as intended to be exercised only for the purpose of administering the estate according to law."

The plain intention of the trust deed (not the written direction of Judge and Mrs. Aldrich who were powerless to change what they had procured to be written) was that if it should be deemed by Judge and Mrs. Aldrich that the property should be sold, they should so direct the trustee; that the trustee should make the sale, and that he should reinvest the proceeds in other property, to be held by him upon the same- trusts. Thus, while the contingent remainder of A. P. Aldrich, 3d, would have been annihilated as to this particular property, it would have been protected by transferring it to the other property, the title of which should have been taken to the trustee.

But that is not what Judge and Mrs. Aldrich directed the trustee to do. He was directed to sell and convey the property to A. P. Aldrich, 2d, for a stated sum, $5,000, and that upon receipt of the purchase price, the trustee should not reinvest the proceeds of sale in other property, and hold it subject to the trusts of the deed, but transmit it to the life tenant, Mrs. Rosa Aldrich, mother of appellant, who was described the *cestui que* trust under the deed, to be by her

reinvested in such other property as she might elect, and that thereupon the trustee should be discharged from all further liability.

Doubtless had Mrs. Rosa Aldrich followed these directions, and the appellant had accepted the fruits of such reinvestment, he would not be heard to claim his contingent remainder in the original property, while holding to that which in a measure represented it. That fact, however, does not appear in the present record. Certainly the appellant should be allowed his election to pursue the property in which in a measure represented it. That fact, however, does repudiate the whole transaction and follow the original property, if his rights had not been concluded by the original direction and the deed to A. P. Aldrich, 2d; and until it appears that he has elected the former, his remedy upon the latter course cannot be concluded upon a demurrer.

The trustee could not shield himself behind the direction of Judge and Mrs. Aldrich. They had created the trust, parted with what rights they may have had in the land, and had no power of control over the trust or trust estate, except what was confirmed by the trust deed, and this was simply to direct and approve a sale of the property for reinvestment.

In the case of *Wormley v. Wormley,* 8 Wheat, 421; 5 L. Ed., 651, it is held that where a power of sale is conferred upon a trustee, coupled with the duty of immediate reinvestment, the two facts, while separate and distinct, are intended to be exercised in connection with each other.

"And it is very difficult to perceive how the trustee could arrive at the conclusion that it was proper to sell, unless he had, at the same time, fixed on some definite reinvestment, which, compared with the former estate, would be advantageous to the parties."

It seems too plain for argument that the interposition of an unauthorized direction, is an interference with this clear power and duty.

10—S. C.—126.

That the conveyance of the property by Robert Aldrich, trustee, to A. P. Aldrich, 2d, on December 26, 1889, in pursuance of the written direction of Judge and Mrs. Aldrich, constituted a technical breach of trust, appears beyond question. They had the power, under the trust deed, to direct the trustee to sell, and to direct how the proceeds of sale should be reinvested by him, subject, of course, to the terms of the trust as defined in the trust deed. They did not have the power to direct him to sell and deliver the entire trust estate, in money, to the life tenant, to be by her reinvested, and thereby to be discharged from his trust. Granting that this did not amount to a destruction of the trust, it certainly greatly imperiled it. In the trust deed it was studiously provided that the trustee could make a reinvestment of the proceeds of sale only by the written consent and approval of Judge and Mrs. Aldrich, or that if they should be dead, by the written consent of Mrs. Rosa Aldrich *and the trustee.* By the arrangement that was actually consummated, the reinvestment was left entirely to the pleasure of the life tenant. It amounted also to a change of the trustee, without the consent of any one interested, and without the sanction of the Court, as required by section 5458, Vol. 3, Code of Laws A. D. 1922.

The circuit decree appears to proceed upon the theory that Judge and Mrs. Aldrich, having furnished the purchase money for the land, and being desirous of making provision for their daughter, reserved practically unlimited control of the trust, notwithstanding the specific terms of the deed. It is said:

"My construction of this paragraph of the deed is that A. P. Aldrich and M. A. Aldrich realized that contingencies might arise, by virtue of which it might be necessary materially to change the method of investment, and that they carefully provided in the trust deed that, should this contingency arise that by directing and requesting the trustee

to act, *they might make any change, no matter how sweeping,* in the investment, as they might desire to make."

In the first place, Judge and Mrs. Aldrich, having by their own voluntary act caused the creation of the express trust, parted with their entire interest in the property, except the contingent remainder upon the death of Mrs. Rosa Aldrich without children. There was left in them, or rather conferred upon them by the deed, simply the power to direct and approve a sale and a reinvestment of the proceeds. In the second place the only contingency which might authorize any interference by them with the trust estate, was the possible existence of circumstances making it expedient, in their judgment, to change the investment by a sale of the property and a reinvestment of the proceeds of the trustee upon the same trust terms.

To say that this gave them the power to authorize the trustee to sell the property, and turn over the proceeds to the life tenant, for reinvestment as she might deem expedient, thus to imperil the trust, practically to annihilate the interest of the remainderman, to discharge the trustee and to substitute another in his place with unrestrained power, appears to authorize liberties with a solemn instrument amounting to an absolute disregard of its provisions.

If the contest involved in this proceeding had arisen with A. P. Aldrich, 2d, the grantee in the deed from the trustee, there cannot be a doubt but that he took the deed with full knowledge of the trust and of its breach, and would be accountable to the remainderman as a constructive trustee.

"Where a person buys property, with a knowledge that it is subject to a trust, he takes it subject to the trust." *Smith v. Daniel,* 2 McCord, Eq. 143; 16 Am. Dec. 641.

"One purchasing land, to which another has an equitable title, with notice of the equity takes subject to the equity, and is bound to convey in like manner as the person from whom he purchased." *Massey v. McIlwain,* 2 Hill Eq., 421.

In *Simmons v. Bank,* 5 Rich. Eq., 270, it is said:

"One who purchases from a trustee, with notice of the trust, becomes himself chargeable with the equities of the trust, to the extent of his dealing, if the trustee's act is a violation, or an abuse of the trust.

"In this case, the bank had notice, for the trust was unmistakably stamped upon the face of the certificates; and, if they had followed up the indications thereby afforded, it would have led to the most complete information on the subject, and shown them the utter incapacity of Laurens to sell, much less to hypothecate for his own use the certificates of stock, which stood in his name for the benefit of the wards of the Court." *Simons v. Bank,* 5 Rich. Eq., 270.

In *Webb v. Graniteville,* 11 S. C., 396; 32 Am. Rep, 479, it is said:

"The transfer to Paul as guardian was made with full knowledge on the part of the corporation of the source from which information might have been derived as to the persons represented by Paul, and it must be assumed that the defendant corporation either had full knowledge of the persons entitled as beneficiaries under the trust, or improperly neglected to inform themselves on such subject."

In *Salinas v. Pearsall,* 24 S. C., 179, the Court says:

"A purchaser is not ordinarily required to see to the application of the purchase money where the vendor has power to sell, but where he knows, or ought to know, that a breach of trust is being committed, he cannot shield himself."

In that case the trustee assigned a note and mortgage payable to himself as trustee, for the purpose of securing advances made to the beneficiary and himself. The Court said:

"Now, the important question arises, did Salinas (the assignee) have knowledge of this fact (the existence of the trust), or knowledge of facts sufficient to put him upon such inquiry as would have led to a discovery of the trust impressed upon those papers? If so, he could not hold

them discharged of the trust, unless they were properly assigned under the power of the original deed. * * * The very papers assigned to him advertised him of the fact on their face, that they were connected with a trust. * * * This it seems to us, was enough * * * to make him hesitate, at least to make him inquire into the nature and character of this trust. It does not appear that he had done this, nor that had he looked into the records he would have failed to ascertain the facts in reference thereto."

In the case last cited, the trustee had the power to sell with the consent of the beneficiary, and it was urged that the assignee should be protected as he had been informed of this power and that the consent had been given. Meeting this point, the Court said:

"True, the trustee had power to sell the trust estate or any portion thereof, with the written consent of Mrs. Jarrott, for reinvestment. Was the assignment here for reinvestment? Certainly not. It was to pay a debt contracted by Mrs. Jarrott and her husband for supplies, and its effect was not to keep the trust estate alive, but to destroy it, and this must have been apparent to Salinas."

The case of *Rabb v. Flenniken,* 29 S. C., 278; 7 S. E., 597, presents a striking parallel to the case at bar. The trustee was authorized to sell, with the consent of the beneficiary, for reinvestment, the acquired property to be held upon the same trusts. He conveyed land with the consent of the beneficiary, and received in part payment a debt which he owed to the grantee The Court held:

"The only sale which the deed authorized was one for reinvesment; the defendant knew that the sale to him was not made for that purpose. He therefore participated in the breach of trust. In fact, it was through him that said breach was committed. We think the sale was void and should have been so held by his honor."

It is true that in the case last cited there was an express provision in the trust deed that the property, in which the

proceeds of a sale of the original trust estate might be invested, should be held by the trustee upon the same trusts as were defined in the trust deed.  In the trust deed now under consideration the express provision is not present. The only reasonable inference, however, from a direction to the trustee to sell the trust estate for reinvestment, is that the trustee shall hold the acquired property under the same trusts.

In the case of *Sullivan v. Latimer,* 35 S. C., 422; 14 S. E., 933, it is held that where one purchases land sold as the absolute estate of another, knowing at the time that such other held the land as trustee for his sister and her children, the purchaser takes the land subject to the trust, and becomes himself a trustee.  The same rule should apply to one who purchases under circumstances constituting a breach of trust on the part of the trustee, of which breach he had knowledge, or of facts sufficient to put him upon a successful inquiry.

In *Price v. Krasnoff,* 60 S. C., 172; 38 S. E., 413, the Court said:

"No one who purchases is obliged to see that purchase money is reinvested.  * * *  It is only where third parties have notice, either from the terms of the instrument creating the trust, or other notice, or from some collusion with the trustee in the wrong done a *cestui que* trust, that they are liable for the breaches of duty by the trustee."

In *Cathcart v. Matthews,* 105 S. C., 329; 89 S. E. 1021, it is held:

"If the grantee purchased with notice of the trust, she took subject to it, and became a constructive trustee" — citing 1 Perry, Trusts, § 334.

In *Bank v. Seton,* 1 Pet. 299; 7 L. Ed. 152, it is said:

"It is a settled rule in equity, that all persons coming into possession of trust property, with notice of the trust, shall be considered as trustees, and bound, with respect to that special property, to the execution of the trust."

The law being perfectly clear as to the position occupied by the immediate grantee of the trustee, who unquestionably had full knowledge of the trust and the breach of it through the scheme evolved from the direction of Judge and Mrs. Aldrich, the vital inquiry remains as to the position occupied, or rather the relation sustained, by the subsequent alienees of such grantee; and this inquiry involves the question whether or not they can sustain the position of *bona fide* purchasers from the trustee without notice of the breach of trust, for if they had notice of the trust and of its breach, or sufficient notice to put them upon inquiry which, if pursued with diligence, would have disclosed the facts, they are bound by the same rule which binds the grantee from the trustee.

It is manifest that this question cannot be decided upon the present appeal. The appeal is from an order sustaining a demurrer to the answer of the defendant A. P. Aldrich, 3d, which does not present the contention that such alienees are not subsequent purchasers for value without notice. The allegations contained in the eighth paragraph of the answer, from which it might be insisted that this issue is raised, are but statements of legal conclusions, which the demurrer does not admit. As the answer stands, even omitting the legal conclusions, the defendant would be entitled to the decree unless his codefendants should establish the affirmative defense of subsequent purchasers for value without notice, or other available defense. The defense alluded to is an affirmative one, and must be pleaded. *Snelgrove v. Snelgrove,* 4 Desaus., 274. *Chestnut v. Strong,* 2 Hill, Eq., 146. *McBee v. Loftis,* 1 Strob. Eq. 90. *Roberts v. Ellis,* 59 S. C., 137; 37 S. E., 250. *Carr v. Mouzon,* 93 S. C., 161; 76 S. E., 201; Ann. Cas. 1914C. 731. *Merck v. Merck,* 95 S. C., 328; 78 S. E., 1027.

The codefendants having demurred and not answered, a defense which can be interposed only by answer cannot be considered, but the codefendants should be allowed to

answer or reply to the defendant's answer, setting up the plea of *bona fide* purchasers for value without notice and such other defenses, such as statute of limitations, laches, election, or estoppel as they may be advised. No intimation as to the validity of any of these is intended to be expressed. As bearing upon the matter of notice the absence of which is essential to a plea of *bona fide* purchaser, it may be instructive to refer to 2 Pom. Eq. Jur., § 626. Notes of Judge Freeman in 23 Am. Dec., 48, and 64 Am. Dec., 201. *Moyle v. Campbell,* 119 S. E., 186, decision filed September 12, 1923. *Black v. Childs,* 14 S. C., 312. *Dillard v. Crocker,* Speer. Eq., 20. Perry, Trusts (2d Ed.) § 830; note to 19 Am. St. Rep. 296.

It is possible that the deed from Robert Aldrich to A. P. Aldrich, which does not appear in the record, might throw some light upon the question of notice.

The declaration in the leading opinion, "No one had a right to complain of a failure to reinvest except one who has some right in the property, or the proceeds of sale. No one had such a right, not even the daughter Rosa," appears to ignore the rights both of the life tenant and of the remainderman. Certainly Mrs. Rosa Aldrich, who was given the use for life, had an interest in the reinvestment, and, conceding that she, by accpeting the fund *in solido,* would not be in a position to complain that it had not been reinvested, it is equally certain that the remainderman had a contingent interest after the use of Mrs. Rosa Aldrich had been exhausted, and was directly interested in the proper execution of the trust by a reinvestment by the trustee; and that his rights were substantially affected by a transfer of the corpus to the life tenant.

It is clear, therefore, in my opinion, that the demurrer was improperly sustained; that the decree should be reversed, and that the case should be remanded to the circuit Court, with directions that the answer of A. P. Aldrich, 3d, within 10 days after the filing of the remittitur, be served upon

the attorneys of the codefendants, and that they be allowed 20 days thereafter within which to serve such reply thereto as they may be advised, and that the case proceed to trial upon the merits.